UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BLAINE ALAN PAYNE | CIVIL ACTION NO. 3:14-cv-3456 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| JACOB SPOON, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Blaine Alan Payne, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 15, 2014. Plaintiff is an inmate incarcerated at the Ouachita Parish Corrections Center (OPCC).  He is awaiting trial on charges of simple escape, aggravated escape and probation violation.[1]  These charges are unrelated to his complaint. Plaintiff initially sued the West Monroe Police Dept. (WMPD),  Officer Jacob Spoon, the Wal-Mart of West Monroe, the CEO of Wal-Mart and the District Manager of Wal-Mart claiming false arrest and imprisonment, illegal search and seizure, and excessive force.  He amended his complaint to dismiss Officer Spoon and to add Officers Hattaway and Horton and presumably Wal-Mart employee Clay Joslen as defendants. He prays for compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

---

[1] http://www.opso.net/bookings/

*Statement of the Case*

In his original complaint [Doc. 1], plaintiff alleged that on some unspecified date he went to the Wal-Mart in West Monroe, Louisiana, in order to return or exchange a lap-top charger. The customer service clerk advised plaintiff that he could not return the item without a receipt since it cost in excess of $50. Plaintiff then asked the clerk "for something to show it was mine" and she provided a Wal-Mart bag. Plaintiff then went to the electronics department and spoke with the manager who advised him to check the boxes on the shelf "to find one that matched." He further advised plaintiff that if he could not find a match on the shelves then he could not purchase the item since there were none elsewhere in stock.

It is unclear what plaintiff did immediately thereafter; however, at some point he was walking past the pharmacy section when he was approached by two West Monroe Police Officers who inquired whether plaintiff was shoplifting. Plaintiff claims he denied the allegation and offered to accompany the officers to the customer service clerk to watch security footage. The officers then "tried to grab" plaintiff and "forcibly lead" him out of the store. Plaintiff resisted and the officers attempted to subdue plaintiff with his Tazer. The officer missed and plaintiff was tackled by store security. His face was slammed to the floor and he sustained a black eye and bruises. He was searched, arrested and booked at the West Monroe Jail. Thereafter the theft charges were dropped. Nevertheless, according to plaintiff he had to bond out after having been in custody for over two months during which time he lost his job and personal property.

Plaintiff was directed to amend his complaint to provide a more detailed factual basis for his suit. On February 26, 2015, he filed an amended complaint. [Doc. 9] According to the amended complaint, Clay Joslen, a Loss Prevention Associate at Wal Mart, advised Officer

Horton of the West Monroe Police Department that he observed plaintiff cut open a package, remove an item, and place it in his front left pants pocket. Officer Horton then approached plaintiff inside the store and asked plaintiff to empty his pockets and put his hands behind his back. Plaintiff refused and Officer Horton and Officer Hattaway forced plaintiff to the ground by the use of physical force and a Tazer. Plaintiff was arrested for possession of drugs, resisting an officer, theft, and destruction of property and remained in custody for 60 days until all the charges were dropped or dismissed.

     Plaintiff submitted a copy of Officer Hattaway's initial report.  Therein Hattaway alleged that on January 5, 2014, he was dispatched to the Wal-Mart where he met with Clay Joslen, the Loss Prevention Associate who advised that "he observed the suspect, Blaine Payne, cut open a package and place the contents of the package into his front left pants pocket." Thereafter the officers made contact with the suspect and Joslen positively identified plaintiff as the suspect he observed. While Hattaway spoke to Joslen, Horton, believing that plaintiff was armed with a knife, advised plaintiff to turn around so he could be frisked.  Plaintiff refused and began to back away from the officer. Horton grabbed plaintiff and plaintiff continued to struggle. Hattaway assisted and attempted to subdue plaintiff with his Tazer. That proved unsuccessful; however, with the assistance of multiple citizens, plaintiff was subdued.  A silver canister containing methamphetamine was discovered in plaintiff's pocket. Plaintiff was then transported to the West Monroe Corrections Center. Thereafter Hattaway advised plaintiff of his rights and asked him why he pulled away from Officer Horton. Plaintiff advised that he had recently taken methamphetamine and does not like to be touched. He admitted to possessing methamphetamine and was charged with that offense as well as resisting an officer and transported to Ouachita

Corrections Center for booking. Officer Hattaway then reviewed video surveillance in the store and concluded that plaintiff had not committed any theft. Those charges were ultimately dismissed; however, the drug charges and resisting arrest charges are apparently still pending.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Section 1983 Claims against the Wal-Mart of West Monroe, its CEO, its District Manager and its Loss Prevention Specialist, Clay Joslen*

For plaintiff to state a viable claim under 42 U.S.C. § 1983 against any private defendant, such as Wal-Mart or its management or employees, the conduct of the private defendant that

4

forms the basis of the claimed constitutional deprivation must constitute state action under color of law. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924, 928–32, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The determination of whether a private actor can be subjected to constitutional liability is whether "such a close nexus between the State and the challenged action" exists "that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (internal quotation omitted). The inquiry into whether private conduct bears a sufficiently close nexus to the state is highly circumstantial and far from precise. *Id.*, 531 U.S. at 295-96, 121 S.Ct. 924 (stating that "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity" and that "[f]rom the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action") (citations omitted).

      The Fifth Circuit has developed a consistent doctrine applying a nexus-test to determine when a private enterprise may be subject to constitutional liability. *See Morris v. Dillard Dept. Stores, Inc.,* 277 F.3d 743 (5th Cir. 2001); *Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir.1989); *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir.1982) (*per curiam*); *White v. Scrivner Corp.*, 594 F.2d 140, 141 (5th Cir.1979); *Duriso v. K–Mart No. 4195 Div. of S.S. Kresge Co.*, 559 F.2d 1274, 1277 (5th Cir.1977) (*per curiam*); *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93, 94 (5th Cir.1975) (*per curiam*).

      In *Brookshire*, customers brought a §1983 civil rights claim after the store manager reported his suspicion of shoplifting to police; the police then detained, fingerprinted, and "booked" the customers. *Brookshire*, 519 F.2d at 94. The Fifth Circuit held that in order to

succeed with their claim against the private-actors, the plaintiffs had to show that the police and the store managers were acting "in concert; that [the private merchant] and the police had a customary plan whose result was the detention in the present case." *Id.* The requisite nexus was found in that case and the merchant was deemed a state-actor after the Court concluded that the police and merchant maintained a pre-conceived policy by which shoplifters would be arrested based solely on the complaint of the merchant. *See id.* at 94–95.

In later cases, the Court refined the doctrine. Now, a merchant is not considered a state-actor unless the conduct on the part of police officer giving rise to the claimed deprivation occurred solely because of the designation of suspicion by the merchant without any independent investigation by the officer. *See Bartholomew*, 889 F.2d at 63 (declining to find state action on the part of a defendant shopping mall where arresting officers made the arrest of customers causing a disturbance based not only on the request of mall security, but also on independent observation); *Hernandez*, 673 F.2d at 771–72 (upholding a bench verdict in favor of a merchant on a § 1983 claim where the plaintiff was detained in a store on suspicion of shoplifting, a police officer was called to the scene, the officer performed an independent investigation and arrested the plaintiff); *White*, 594 F.2d at 142–44 (upholding a bench verdict in favor of a merchant on a § 1983 claim because unlike the police in *Brookshire*, the police in White had a policy of conducting independent investigations to make determinations to arrest and "did not customarily rely solely on the merchants' accusation").

Thus, a private merchant will be considered a state-actor in those instances where, "... pursuant to a 'preconceived plan,' [the officer] would arrest any person merely because he was designated for arrest by the store [employee]." *Hernandez*, 673 F.2d at 772 (citations omitted).

6

(*See also Bartholomew*, 889 F.2d at 63 (the "crucial" focus of the inquiry is whether an officer "acted according to a preconceived plan and on the say-so of the private actor, not on the basis of [the officer's] own investigation").

The officer's partial reliance on the merchant's suspicion will not create state action in those instances where the officer performs an independent investigation. *See Bartholomew*, 889 F.2d at 63; *Hernandez*, 673 F.2d at 771–72.  The fact that the arresting officer interviews the employee to obtain an eyewitness account can constitute sufficient independent investigation where the officer was not an eyewitness to any conduct constituting an alleged crime. See *Id.* (holding that "[u]nless he were an eye-witness, a police officer could not make any arrest if he could not rely on information provided by citizens who witnessed the events" and that "[s]uch reliance does not convert the informing party into a state actor"). Other evidence to be considered in this context includes (1) whether the officer interviewed the defendant's employees and the plaintiff; (2) whether he wrote out his own report, and (3) whether he made his own determination concerning arrest. *Id.* at 772.  A merchant will not be considered a state-actor and thus be subject to liability under § 1983 unless the arresting officer has failed to perform an independent investigation. Further, the evidence of a proper investigation will normally include such indicators as whether the officer interviewed the complaining employee, whether the officer conducted an independent observation of the suspect, and whether the officer thereafter wrote his own report. *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001).

Here, plaintiff has provided a copy of Officer Hattaway's initial report. [Doc. 9-1, p. 1] According to the report, Officers Hattaway and Horton contacted Joslen upon their arrival at the store. Joslen advised the officers that he had observed plaintiff cut open a package and place its

7

contents in his pocket. He provided a description of the plaintiff to the officers and upon locating plaintiff at the General Merchandise doors, Joslen positively identified plaintiff as the suspected shoplifter.  Officer Horton, believing plaintiff might be armed, asked him to turn around and submit to a pat down search or frisk of his clothing. At that point plaintiff pulled away and began to struggle with the officers.  He was subdued with the help of others and was discovered to be in possession of what ultimately turned out to be an illegal drug, namely methamphetamine. Plaintiff was arrested and charged with theft and possession of drugs and resisting arrest. Following the arrest, Hattaway viewed the store surveillance video and observed plaintiff from the time he entered the store until his arrest and departure. This independent investigation revealed that while plaintiff opened a package, he did not steal the contents of the opened package nor any other items in the store.  As a result, the theft charges were ultimately dropped.

  Here, it is clear that officers Hattaway and Horton interviewed Joslen, the complaining store employee, observed the plaintiff, attempted to question him and then, following the arrest, authored their own report. Plaintiff does not deny any of the relevant facts alleged in Officer Hattaway's report.  Ultimately, plaintiff was arrested, not just for shoplifting, but also for possession of drugs and resisting arrest. [Doc. 9-1, pp. 2-3] Clearly, as a matter of law, the Wal-Mart and its CEO, District Manager, and its Loss Prevention Officer, Mr. Joslen, were not state-actors and thus, with regard to these defendants, plaintiff fails to state a claim for which relief may be granted.

### 3. False Arrest, False Imprisonment, and Excessive Force – Officers Hattaway and Horton

  Of course, Officers Hattaway and Horton were, at all times, state-actors. Nevertheless, plaintiff's claims against the officers are subject to dismissal for other reasons.  "To prevail in a

§ 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *O'Dwyer v. Nelson*, 310 Fed. Appx. 741, 2009 WL 412462, at *3 (5th Cir.), *cert. denied*, 130 S.Ct. 494 (2009) (quotation omitted). Likewise, in order to establish a claim for false imprisonment, plaintiff must prove, among other things, the deprivation of a constitutional right, such as the right not to be arrested or detained without probable cause. *Haggerty v. Texas So. Univ.*, 391 F.3d 653, 655-56 (5th Cir.2004); *Brown v. Bryan County*, 67 F .3d 1174, 1180, 1181 (5th Cir.1995), vacated on other grounds, 520 U.S. 397 (1997).

"Probable cause" as used above, is defined as a peace officer's reasonable belief that a person has committed a crime. An arrest and subsequent detention is constitutionally valid if, at the moment the arrest was made, the officer had probable cause to make it; that is, if the facts and circumstances within his knowledge and of which he had reasonably trustworthy information at that moment were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense. *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir.2003); *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir.2000) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)); *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir.1994).

Contrary to his contention, plaintiff was not arrested for shoplifting alone; he was also arrested and charged with possession of methamphetamine and resisting an officer, and, it appears that even though the shoplifting charges were declined, those other charges remain pending. The officers were, as noted above, investigating Mr. Joslen's complaint. The officers were authorized under Louisiana law to detain plaintiff for a reasonable period of time to complete their investigation. Their initial detention of plaintiff was NOT an arrest. See La.

9

C.Cr.P. art. 215. Further, the officers were authorized under Louisiana law to conduct a limited search of the plaintiff's outer clothing to determine whether he was armed. See La. C.Cr.P. art. 215.1. By his own admission, plaintiff refused the officer's lawful request to empty his pockets and place his hands behind his back. Plaintiff was arrested only after he resisted the officers' attempts to complete their investigation and he was thereafter found to be in possession of suspected drugs. There was ample probable cause justifying his detention, search, arrest and subsequent imprisonment and therefore his claims of false arrest and imprisonment are frivolous.

Finally, plaintiff alleges that Officers Hattaway and Horton used excessive force against him. Such claims concerning the use of force by the police are evaluated under a reasonableness standard. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994). Thus, in order "to establish a claim of excessive force, a plaintiff must show that, in addition to being seized, he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838 at 846 (quotation omitted). "We determine whether the force was excessive 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"Officers may consider a suspect's refusal to comply with instructions ... in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009) (citations omitted). "In evaluating excessive force claims, courts may look to the seriousness of injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.'" Thus, "the extent

of [the] injury inflicted" may be considered in determining whether the officers used excessive force. *Id.* at 168 (quoting *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir.2006) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986))).

Plaintiff, by his own admission, refused to comply with the officers' reasonable and lawful instructions to empty his pockets, place his hands behind his back, and submit to a search of his outer garments. In his amended complaint plaintiff alleged that he was Tazed; however, in his original complaint, he alleged that the Tazer did not make contact with him. Further, in the amended complaint he alleged only that the officers "used force to take Mr. Payne to the ground..." As for injury, he claimed in his original complaint that he suffered a black eye and bruised face; in his amended complaint he alleged "nerve damage to left arm." Given the fact of his admitted resistance and relatively minor injuries, plaintiff's excessive force claim is likewise frivolous.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, April 16, 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE